IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2006 Session

# EMMETT CLIFFORD ET AL. v. CRYE-LEIKE COMMERCIAL, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 04C-155     Thomas Brothers, Judge**

_____

**No. M2005-00376-COA-R3-CV - Filed on July 11, 2006**

_____

This appeal involves a business patron who tripped over a snow-covered wheelchair ramp during a snowstorm. The patron filed a negligence action in the Circuit Court for Davidson County alleging that the landowner was negligent for failing to keep the ramp clear of snow or to post warnings of the presence of a wheelchair ramp concealed by the fallen snow. The landowner filed a motion for summary judgment asserting that it did not have a duty to remove the snow or provide warnings of the presence of the wheelchair ramp as long as the snow was falling. The trial court granted the summary judgment, and the patron appealed. We have determined that the landowner is entitled to a judgment as a matter of law because it did not owe a duty to the public to keep the wheelchair ramp clear of snow during the snowstorm or to warn persons coming onto the property of the existence of the wheelchair ramp that was concealed under several inches of snow.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Shelley I. Stiles, Brentwood, Tennessee, for the appellants, Emmett Clifford and Judy Clifford.

Tom Corts, Nashville, Tennessee, for the appellee, Crye-Leike Commercial, Inc.

**OPINION**

**I.**

Nashville experienced a heavy snowfall on January 16, 2003. According to the National Weather Service, the winter storm began around 8:00 a.m. and by 1:45 p.m., the city had received seven inches of snow. The conditions were so severe that motorists were stranded in either slow-moving or non-moving traffic. The interstates were gridlocked, some backed up as much as five hours. Schools, businesses, and government agencies closed early. At one point, sixty school buses were stranded in the snow, and many students did not arrive home until 10:00 p.m.

Despite the dangerous weather conditions, at approximately 1:00 p.m., Emmett and Judy Clifford decided to drive to the State Farm Mutual Auto Insurance Company (State Farm) office on Andrew Jackson Parkway to pay an insurance premium. State Farm leased this office from Crye-Leike Commercial, Inc. (Crye-Leike), and Crye-Leike was responsible for managing the property. Although Crye-Leike had retained a snow-removal company, it decided against asking the company to begin removing the snow or salting the parking lot at the State Farm office until the snowstorm had passed.

Because of the weather conditions, Mr. Clifford was required to thread his way around a number of stranded motorists on his way to the State Farm office. When he arrived at the State Farm office, the snow continued to fall,[1] and the parking lot was completely covered with snow. The State Farm employees were in the process of closing the office for the day. Mr. Clifford walked from his parked car to the office without incident. After he paid his premium, and as he was returning to his car, he slipped off the side of a wheelchair ramp near the front door to the building that was completely covered by snow. The fall shattered his ankle. Because of the weather, it took two hours for an ambulance to arrive at the scene. Once Mr. Clifford arrived at the hospital, he was required to wait for another hour while a physician made his way through the snow to the hospital.

On January 14, 2001, the Cliffords filed a complaint against Crye-Leike and others in the Circuit Court for Davidson County.[2] They alleged that Crye-Leike was negligent because it failed to exercise reasonable care and prudence to discover and correct the hazardous condition on the wheelchair ramp and to warn Mr. Clifford of the hazardous condition on the ramp. Crye-Leike filed an answer denying that it had been negligent. It also filed a motion for summary judgment asserting that it did not have a duty to remove the snow on the wheelchair ramp as long as the snow was falling. The trial court agreed and, based on the undisputed facts, determined that Crye-Leike was entitled to a judgment as a matter of law. The Cliffords have appealed.

## II.

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90

---

[1] Although there was some deposition testimony from Mr. Clifford that the snow had stopped by the time he arrived at the office, the Cliffords' response to Crye-Leike's motion for summary judgment and statement of undisputed material facts agrees that it was undisputed that the snow was still falling heavily and travel conditions were hazardous when Mr. Clifford visited the Crye-Leike office.

[2] The Cliffords later voluntarily dismissed their claims against all defendants except Crye-Leike.

S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998). When the moving party is the defendant, it is entitled to a judgment as a matter of law only when it affirmatively negates an essential element of the non-moving party's claim or establishes an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n.5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Summary judgments enjoy no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d at 695; *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

**III.**

The Cliffords take issue on appeal with the trial court's conclusion that Crye-Leike did not have a duty to remove the snow from the wheelchair ramp or at least to warn passers-by that a wheelchair ramp was concealed beneath the newly fallen snow. Even though they concede that questions involving the existence and extent of one's duty to prevent harm to others are questions of law,[3] they insist that the trial court erred by concluding that Crye-Leike did not have a duty either to remove or to warn of the dangerous condition caused by snow covering the wheelchair ramp. We disagree.

**A.**

Dangerous conditions created by the natural accumulation of snow or ice are considered to be among the "normal hazards of life." *Grizzell v. Foxx*, 48 Tenn. App. 462, 467, 348 S.W.2d 815, 817 (1960). Accordingly, landowners are not required to keep their premises free of natural accumulations of snow and ice at all times. *Bowman v. State*, No. M2004-01318-COA-R3-CV, 2006 WL 770454, at *4 (Tenn. Ct. App. Mar. 24, 2006) *perm. app. filed* (Tenn. May 23, 2006); *Howard v. FMS, Inc.*, No. 01A01-9709-CV-00479, 1998 WL 195960, at *4 (Tenn. Ct. App. Apr. 24, 1998) (No Tenn. R. App. P. 11 application filed). Instead, they are expected to take reasonable steps to remove natural accumulations of snow or ice within a reasonable time. *Grizzell v. Foxx*, 48 Tenn. App. at 468, 348 S.W.2d at 817. Thus, this court has held that it would not be feasible or fair to

_____

[3]*West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003).

impose a duty on a landowner to continuously remove snow or ice in the middle of an ongoing winter storm. *Simmons v. Russell*, No. 01A01-9709-CV-00467, 1998 WL 251751, at *3 (Tenn. Ct. App. May 20, 1998) (No Tenn. R. App. P. 11 application filed).

It is undisputed that the snow was still falling when the Cliffords arrived at the State Farm office. Because the snowstorm had not yet ended, Crye-Leike's duty to begin removing the snow had not yet begun. Accordingly, the trial court was correct when it determined that Crye-Leike was not negligent because it had failed to begin to remove the accumulated snow while it was still snowing.

**B.**

The Cliffords also insist that even if Crye-Leike did not have a duty to remove the naturally accumulated snow on its parking lot and entrance while the snow was still falling, it had a duty to warn the public of the existence of the wheelchair ramp that was concealed by the fallen snow. Crye-Leike responds that the scope of its duty to warn and its duty to remove are essentially the same. While we are not prepared to hold that the scope of the duty to warn is identical to the scope of the duty to remove, we have determined that Crye-Leike had no duty under the undisputed facts of this case to warn State Farm's customers of the presence of the wheelchair ramp under the snow.[4]

The traditional "open and obvious" rule has not been totally subsumed by the doctrine of comparative fault. *Coln v. City of Savannah*, 966 S.W.2d 34, 43-44 (Tenn. 1998);[5] *Winstead v. Goodlark Reg'l Med. Ctr.*, No. M1997-00209-COA-R3-CV, 2000 WL 343789, at *3 (Tenn. Ct. App. Apr. 4, 2000) (No Tenn. R. App. P. 11 application filed). While a landowner will not be relieved of its duty to exercise reasonable care to protect invitees from injury simply because a dangerous condition is open and obvious, *Coln v. City of Savannah*, 966 S.W.2d at 43, the openness and obviousness of an allegedly dangerous condition is a factor for the court to consider when determining the existence and scope of the landowner's duty. The duty issue must be analyzed with regard to the foreseeability and gravity of the harm, and the feasibility and availability of alternative conduct that would have prevented the harm. *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d at 551; *Coln v. City of Savannah*, 966 S.W.2d at 43; *Friedenstab v. Short*, 174 S.W.3d 217, 223-24 (Tenn. Ct. App. 2004).

---

[4]Many jurisdictions have held that a landowner's duty to use reasonable care to prevent injury does not include either the duty to remove natural accumulations of snow or to warn invitees of the dangers associated with the natural accumulation of snow and ice. *See, e.g., Munsill v. United States*, 14 F. Supp. 2d 214, 221 (D.R.I. 1988); *Smalling v. LaSalle Nat'l Bank*, 433 N.E.2d 713, 714-15 (Ill. App. Ct. 1982); *Corbin Motor Lodge v. Combs*, 740 S.W.2d 944, 946 (Ky. 1987); *but see Estep v. B. F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911, 913-14 (Ky. Ct. App. 1992); *Brinkman v. Ross*, 623 N.E.2d 1175, 1177 (Ohio 1993); *Dover v. W. H. Braun, Inc.*, 111 P.3d 243, 245-46 (Okla. Ct. App. 2003); *Sherman v. Platte County*, 642 P.2d 787, 789 (Wyo. 1982).

[5]*Coln v. City of Savannah* was clarified in *Cross v. City of Memphis*, 20 S.W.3d 642, 643 (Tenn. 1998) and then overruled on other grounds in *West v. East Tenn. Pioneer Oil Co.*, 172 S.W.3d at 550.

In light of the nature of the snowstorm in this case, we have concluded that it was reasonably foreseeable that most persons would avoid venturing out to conduct routine business transactions. Thus, it would have been reasonable for Crye-Leike to assume that its tenants' customers would have stayed at home and avoided unnecessary travel during the snowstorm. Therefore, Crye-Leike did not act unreasonably when it decided not to begin its efforts to remove the accumulated snow or to survey all of the properties it owned or managed to determine whether the snowstorm had created conditions that would be abnormally dangerous to the public. The difficulty and expense of these remedial measures outweighed the possibility that a customer, like Mr. Clifford, who decided to brave the winter weather might injure himself by slipping on the side of a wheelchair ramp concealed under the fallen snow. Accordingly, under the facts of this case, the trial court correctly concluded that Crye-Leike did not have a duty to warn persons doing business at the State Farm office of the presence of the wheelchair ramp that was concealed by the snow.

## IV.

We affirm the order granting Crye-Leike's motion for summary judgment and remand the case to the trial court for whatever further proceedings may be appropriate. We tax the costs of this appeal to Emmett Clifford and Judy Clifford and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.